EZEKIEL E. CORTEZ (SBN 112808)
Law Offices of Ezekiel E. Cortez
550 West C Street, Suite 620
San Diego, CA 92101
T: (619) 237-0309 | F: (619) 237-8052
Attorney for Defendant: *Fabrisio Arias*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA
# (THE HONORABLE JINSOOK OHTA)

| | |
|---|---|
| UNITED STATES GOVERNMENT,<br>      Plaintiff,<br>vs.<br><br>FABRISIO ARIAS,<br>      Defendant. | Case No. 22CR2745-JO<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date: February 7, 2025<br>Time: 9:30 a.m. |

TO: TARA K. MCGRATH, U.S. ATTORNEY; PATRICK SWAN, ASSISTANT U.S. ATTORNEY; NAOMI STALBAUM, PROBATION OFFICER:

## I.
## Reliable Context of Mr. Arias' True Role in the Offense.

Tho faithfully apply all § 3553(a) factors to Fabrisio Arias' sentencing, the Court must perhaps ask itself - What is Mr. Arias' true accountability *for his part* in the fraud scheme that was planned, controlled, directed, and orchestrated by the, as yet, publicly unnamed more culpable co-conspirator(s)? A good place to begin the § 3553(a) analysis may be with Mr. Arias' letter to the Court and the Pre-Sentence Report's version of the Offense Conduct.

First, in his letter, Mr. Arias sincerely acknowledges his accurate role and partial knowledge of the details of this elderly-victim scheme:

> I recklessly agreed to process checks and other financial instruments for [lead conspirator(s)] through ***my own bank account and used my own home address***.
> I did these illegal things honestly believing that [lead conspirator] was laundering money for others. I did not know that he and his associates had been targeting vulnerable elderly people to defraud them. Had I known this, ***I would have never recklessly agreed to join his scheme***.
> Had I callously agreed to defraud and victimize elderly people, I would have used a fake name and address to launder the funds. I knew how to do such things. But I never signed up nor agreed to this type of serious victimization of elderly people.
> The truth, Judge Ohta, was that I suspected the funds were the product of illegal drug trafficking and that laundering them would not be detected. I recklessly agreed to this because at the time I had myself been hooked on cocaine. My judgment was heavily clouded by the drug use, and I had fallen under almost unbearable stress from financial pressures.

Letter to Court by Fabrisio Arias, Exhibit A.[1]

And second, at Paragraph 170 of the Presentence Report (PSR), Probation Officer Stalbaum provides the Government's own summary characterization of the "aggravating" aspect of this case:

> 170. In aggravation, in the span of at least two years, November 2020 to September 2022, the defendant and co-conspirators defrauded 22 victims, earning at least $395,536.05. Furthermore, he transferred over $237,835 in fraudulent proceeds to the co-conspirators in Costa Rica.

---

[1] *See also,* separately filed Exhibit C, especially the last letter addressed to the Court.

*Defendant's Sentencing Memorandum*,
United States v. Fabrisio Arias, 22CR2745-JO

2

> Some of the victims lost their entire savings, causing substantial financial hardship. Financial crimes, though not violent, can result in serious economic hardship as well take an emotional and psychological toll on victims.

This reductive version of the aggravating facts, lumping Arias with the co-conspirators because he is the only one who the Government has managed to arrest, is not quite complete and tends to unfairly mislead.

A more accurate picture of the offense conduct has been provided at PSR paragraphs 5-7 and 11- 40, where the vast illicit victimization of unsuspecting elderly individuals is correctly attributed, not to Arias, but to the Co-conspirators. And specifically, to Co-conspirators "Paul Moore", "Rick Sanchez", a woman named "Emily Bennett", and "Mark Higgins". The discovery provided attributes the control and direction of the scheme to two un-named Co-conspirators currently believed to be hiding in Costa Rica. These two individuals, undeterred, are believed to still be victimizing *even more hapless victims*. *See,* Exhibit C, first three pages, filed separately (these three pages provide but a sample).

But it is not only Mr. Arias in his letter who attributes the aggravating aspects of this case *to others*. The Government has done the same thing.

Early in the litigation of this case, Mr. Arias in his *Motion to Vacate Order of Detention,* outlined that in the Indictment, and later at page 2, lines 11-14 of the Government's *Motion for Stay and Detention*,[2] the following was undisputed:

1. The Government's Ps & As in support of their *Motion for Stay and Detention* concede that the adjusted Base Offense Level, even after applying *three separate enhancements,* is 25 with an Advisory Guideline Range of 57-71 months. Page 7, lines 1-8.

2. When applying *only* a downward adjustment for -3 acceptance of responsibility for Mr. Arias, the Adjusted Base Offense Level drops to 22, with an advisory Guideline Range of 41-51 months. *This is without any additional mitigating adjustments and 3553(a) factors considered*.

3. The explicit allegations by the Government at the [detention] hearing, ***and in the Indictment***, attribute *the lion's share of the aggravating acts* **to the Co-Conspirators** – directly **targeting** and *defrauding* **specifically** *elderly victims, by using false identities, and controlling the "telemarketing" scheme*. Docket 1, emphasis added.

4. For example, Paragraph 4a., of the Indictment explicitly alleges — "***Co-conspirators located in Costa Rica*** contacted elderly victims in the United States...." And throughout the Indictment the Government alleges that it was the "***Co-Conspirators***" who targeted elderly victims, fooled them, used fake identities, and ***directed and controlled most*** of the aggravating facts in the Indictment. Docket 1, emphasis added.

---

[2] Filed on December 15, 2022, Docket 12.

5. These "Co-conspirators" are identified in the Indictment by known AKAs only as "Paul Moore", "Rich Sanchez", "Emily Bennett", and "Mark Higgins". Their real names, are not alleged. And these "Co-Conspirators" **directed** Mr. Arias to send them $263, 535 from the total identified fraudulently obtained funds.

6. The Government also admitted: "By its very design, the conspiracy was meant ***to evade the reach of United States law enforcement***. The people ***telling the lies -- the telemarketers -- <u>were located abroad</u>, effectively immune to prosecution in this country***. Were Arias afforded the opportunity; he would likely abscond ***to avail himself of this very same immunity***." *Id.*, page 6, lines 4-7, emphasis added.

7. As the Court now knows, Mr. Arias never "abscond[ed] to avail himself of this very immunity." Instead, he is here contritely facing the consequences of his limited role in this otherwise vast scheme.

8. Mr. Arias never fled to Costa Rica to "***to evade the reach of United States law enforcement***." Unlike the Co-conspirators who played the far more aggravating roles.

It is also appropriate now *for sentencing* to restate what the Government argued as it sought detention for Mr. Arias, before this Court. The Government's then argument that Mr. Arias could have financially supported himself and his family in Costa Rica included: "While his girlfriend, daughter, and mother may live here, with hundreds of thousands of dollars that Defendant received off the books, $263,535 of which was forwarded on to coconspirators in Costa Rica, ***plus whatever income he receives from his auto sales business***, Defendant has the resources to flee and to take

*Defendant's Sentencing Memorandum*,
United States v. Fabrisio Arias, 22CR2745-JO
5

his family members with him." Page 9, lines 1-5, emphasis added. *Motion for Stay of Bail Order,* Docket 12, emphasis added.

But had Mr. Arias enjoyed access to "whatever income he receives from his auto sales business", he would not have experienced even more pressing financial obstacles after he was granted bail. Since released on bail, Mr. Arias has had only his income from his restaurant/club managing employment, where he regularly works more than of 18 hours daily, and his now crumbling auto sales business. *See,* Exhibit B, letter to Court from employer Marco McGuire MBG Lifestyle Group, Riverside, California.

Mr. Arias' assets, from the moment he was released on bail, to now, do not include the alleged approximate $100,000.00, according to the Government yet *unaccounted-for*. Of this "unaccounted for" amount of *missing* money, the Government itself already admitted:

> At least according to ***the allegations*** of the indictment, there's ***at least a net $100,000 that's, sort of, unaccounted for***. That is $367,000, it is alleged, that was traced into the bank accounts from this fraud. Another 263 or so out to the co-conspirators in Costa Rica, leaving for himself about $100,000, ***again, unaccounted for***. There are additional cash deposits. Things like that. But just looking at what we think are traced back to the fraud proceeds, there are significant resources.

Reporter's Transcript of Hearing on 12-21-2022, page 6, lines 1-9, emphasis added.

It is important to underscore that the Government *merely argued* that Mr. Arias left "for himself about" "at least a net $100,000". The Government did not actually produce evidence to establish to this Court, by a reliable preponderance, that the still unaccounted-for scheme funds are now in Mr. Arias' actual or constructive possession for his use.

Critically considering the preceding unquestioned facts for sentencing, the conclusion that emerges is that Mr. Arias played a *minor role* in the fraud scheme. Not a minimal role; but minor. The alleged numerous "Co-conspirators" explicitly played more aggravating roles in the perpetration and commission of the vast fraudulent scheme. These suspects remain at large to this day.[3]

//
//
//
//
//
//
//
//

---

[3] See, Exhibit C, filed separately; Mr. Arias hopes to provide additional developing related facts by the time of sentencing.

# II.
# Human Context for Sentencing.



Fabrisio Arias With Daughter After Graduation.



With his Loving Daughter Aria.

*Defendant's Sentencing Memorandum*,
United States v. Fabrisio Arias, 22CR2745-JO

8



With Claudia and Aria.

Mr. Arias' true character and out-of-character nature of his participation in this fraud scheme is displayed in the many letters provide to the Court as collected Exhibit B, attached and redacted. Mr. Arias also has a 21-year-old son, Jacob,[4] who is a full-time university student and a 24-year-old daughter — Valentina[5] — studying nursing:

---

[4] See, paragraph 117, PSR.
[5] PSR paragraph 118.

*Defendant's Sentencing Memorandum*,
United States v. Fabrisio Arias, 22CR2745-JO
9



Mr. Arias, Brothers (each side), Mother (second left), Two Nieces (center back and front), Valentina (third from left), Son Jacob (second right), and Aria in His Arms. (Claudia took the picture).

Since his release on bail, Mr. Arias has also helped provide in-home care for his 74-year-old infirm mother (pictured above, second from left); she currently lives with him[6]. He provides his mother emotional and financial support as she needs it. He has also especially focused on helping his 5-year-old daughter Aria to overcome her special needs. *See,* PSR paragraph 116.

//

//

//

//

---

[6] SR paragraph 112.

*Defendant's Sentencing Memorandum*,
United States v. Fabrisio Arias, 22CR2745-JO
10

# III.
# Minor Role - Arias' Recruiters and Others Involved in the Offense Under *Rodriguez*[7].

The Government, the party seemingly with most of the facts regarding the offense, has indisputably described the facts of this scheme and Mr. Arias' role in it, as noted at preceding Section I, above. This conclusion includes consideration that Mr. Arias used his very true identity, bank account numbers, and family residence in Fontana, connecting him to the defrauded funds by the Co-conspirators. It bears here repeating the Government's own description in the Indictment:

> 4a. ***Co-conspirators located in Costa Rica contacted elderly victims*** in the United States, via foreign voice over internet protocol (VoIP) phone calls, using phone numbers ***that gave the appearance*** that they originated from United States area codes.
>
> b. ***The co-conspirators*** falsely represented that ***they were federal employees***. For example, a co-conspirator using the alias "Paul Moore" claimed that he worked for the U.S. Federal Trade Commission and the Internal Revenue Service.
>
> c. ***The co-conspirators*** falsely represented that the victim had won a sweepstakes or lottery. ***The co-conspirators*** falsely represented that the victim needed to pay a fee or taxes for the prize to be released to the victim.
>
> d. If the co-conspirators were successful in convincing the victim to pay the fee or taxes, ***the co-conspirators directed the victim to send the funds by mail to defendant FABRISIO ARIAS at his Fontana, California residence***. ***The co-conspirators*** directed the victims to send funds via money

---
[7] *United States v. Rodriguez,* 44 F.4th 1229 (9th Cir. 2022).

*Defendant's Sentencing Memorandum*,
United States v. Fabrisio Arias, 22CR2745-JO
11

order, cashier's check, or even cash. The coconspirators often directed the victims to send blank money orders.

e. After a victim sent the fee or taxes, the co-conspirators contacted the victim again, attempting to convince the victim to send additional funds for the release of the prize.

f. In fact, there was no prize. Defendant ARIAS *simply deposited the fraud proceeds into his personal and business bank accounts*. The fraud proceeds were commingled with legitimate personal and business funds, including funds from defendant ARIAS's wholesale car business and entertainment business.

Indictment, Docket 1, emphasis added. The preceding are the facts provided under oath and as accepted by the grand jury in this case.

Indisputably, the explicit allegations in the Indictment regarding role in the offense robustly establish Mr. Arias' minor role.

**1. Minor Role Application Under *Rodriguez*.**

In *Rodriguez,* the 9th Circuit began its analysis of the court's misapplication of minor role analysis in that case, noting:

> Before 2015, the mitigating-role commentary [to § 3B1.2(b)] provided little guidance regarding how to determine a defendant's culpability relative to the other participants in the offense. *For the most part, district courts took a freewheeling approach, considering whatever factors they deemed relevant*. Perhaps unsurprisingly, *district courts diverged significantly in how they applied the minor-role adjustment*. The Sentencing Commission reviewed numerous cases addressing the mitigating-role guideline and determined that it was being "*applied inconsistently and more sparingly than the Commission intended*." U.S.S.G. Supp. to App. C. Amend. 794.

*Id.* at 1233, emphasis added. The court in *Rodriguez* then added "the Sentencing Commission amended the commentary to encourage district courts to grant mitigating-role adjustments *more frequently*." *Id.,* emphasis added.[8]

The *Rodriguez* court also advised:

> We have since held that district courts must consider *all* of these factors when determining whether to grant a mitigating-role adjustment. *See United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016). *Thus, gone are the days when district courts had virtually unlimited discretion to simply deem a defendant to be of above average, average, or below average culpability.* Now, "the assessment of a defendant's eligibility for a minor-role adjustment must include consideration of the factors identified by the Amendment, not merely the benchmarks established by our caselaw that pre-dates Amendment 794's effective date." [Citation omitted]

*Id.,* emphasis added. The court then considered the district court's refusal to grant minor role in *Rodriguez* in the following manner:

> Because we conclude that the district court **misunderstood the mitigating-role commentary**, we clarify the relevant legal standards and leave for the district court **to apply the correct standards in the first instance in this case**.

*Id.,* emphasis added.

//

//

---

[8] The court also cited *United States v. Diaz,* 884 F.3r 911, 915 (9th Cir. 20187).

*Defendant's Sentencing Memorandum*,
United States v. Fabrisio Arias, 22CR2745-JO
13

### 2. The Undisputed Facts of the Offense Conduct Show That Fabrisio Arias Indeed Qualifies for Minor Role.

Mr. Arias' letter to the Court, the very facts the Government included and agreed to in the Indictment, in the Plea Agreement, and Arias' PSR statement of the Offense, provide a robust basis for granting Minor Role.

These facts support application of minor role under the now consistently clear and lenient precedent re-emphasized by *Rodriguez*. Mr. Arias respectfully asks the Court to apply a mitigated role pursuant to §3B1.2(b) and begin the total plea agreement Adjusted Base Offense Level at 27. Then, adjust down by ***-2 for minor role, -3 for acceptance of responsibility, -2 for Zero-Point offender[9], and -2 for fast track***, for an adjusted Base Offense Level of 18, as developed in his Sentencing Summary Chart and the Plea Agreement.

### IV.
### Mr. Arias' Old Prior Record, Fairly Evaluated.

At page 26, part F - Factors That May Warrant a Sentence Outside of the Advisory Guideline System - of the PSR, paragraph 171, Officer Stalbaum notes some of Arias's palpably *dated prior* record[10]:

---

[9] Arias respectfully submits that for USSG §4C1.1, he did not "***personally***" cause "substantial financial hardship". It was his Co-defendants who caused such hardship. He submits this issue to the Court's discretion. *See,* Commentary 1 to 4C1.1.

[10] Arias notes here only the last three of the many dated entries in the PSR to underscore that ***none are scorable***, other than 0 under the Guidelines, because of insightful criminological reasons.

*Defendant's Sentencing Memorandum*,
United States v. Fabrisio Arias, 22CR2745-JO
14

> 171. ARIAS has multiple convictions for grand theft, DUIs, false information, disobeying a court order, failure to appear and driving with suspended license. The defendant has numerous probation violations on his prior convictions. Furthermore, he has other law enforcement contacts for DUIs, purchase for sale of a controlled substance, alien smuggling, petty theft, driving with a suspended license and additional traffic-related violations.

At paragraph 99 of her PSR, Officer Stalbaum importantly concluded – "The total criminal history score *is zero*. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of zero establishes a **criminal history category of I**." Emphasis added. The salient relevance of these latest entries is that they are so old they do not count under the USSGs. They do not count because they are unreliable predictors of Mr. Arias' likelihood of reoffending.

## V.
## Plea Agreement.

At the outset of this case, as in most cases, the terms of the plea agreement were largely controlled and dictated by the Government. For this reason, Mr. Arias provides the following *advisory* Guideline calculations as only a starting point in the Court's 3553(a) considerations:

| Base Offense Level | USSG § *2X1.1(a), §2S1.1(a)(1) Offense Level for Underlying Offenses from which Funds were laundered; Namely,* | 7 |

|  |  |  |
|---|---|---|
|  | *Mail and Wire Fraud §2B1.1(a)(1)* |  |
| Loss > $250,000 | *§2S1.1(a)(1), §2B1.1(a)(1) §2B1.1(b)(1)(G)* | +12 |
| Substantial Hardship | *Five or More Victims, §2B1.1(b)(2)(B)* | +4 |
| Substantial Part of Fraudulent Scheme was Committed Outside the U.S. | *§2B1.1(b)(10)(B)* | +2 |
| Conviction under 18 U.S.C. § 1956 | *§ 2S1.1 (b) (2) (B)* | +2 |
| Minor Role | USSG § 2D1.1 (a)(5) | -2 |
| Acceptance of Responsibility | USSG § 3E1.1 | -3 |
| ***TOTAL*** |  | ***22*** |
| Zero-Point Offender Arias did not "personally" cause hardship | USSG §4C1.1, Commentary 1. | -2 |
| Combination of Circumstances | §5K2.0 | -2 |
| Total Adjusted BOL |  | ***18*** |

With a criminal history score of 0, Mr. Arias has a Criminal History Category I. The corresponding advisory guideline range for him is 27-33 months in custody. *The Government is expected to recommend an additional downward departure/variance*. After the amount of the expected departure/variance from the Government is known, Mr. Arias will respectfully ask the Court to critically apply the 3553(a) to the factors in

this sentencing memorandum and those accepted by the Government in the Plea Agreement.

For all these compelling reasons, and because Mr. Arias *has done everything in his ability to reverse the criminal conduct upon which he recklessly embarked*, he firmly submits that he is now well on his way to rehabilitating. And that he also will continue to dedicate himself to rehabilitation, to live a drug-free lifestyle with the help of his community and the many loyal accomplished friends and his loving family.

## CONCLUSION

For all the foregoing reasons, Fabrisio Arias respectfully asks this Court to impose a sentence of time served, pursuant to 3553(a), and strict conditions of supervised release, like house arrest under reasonable freedom to work and related travel, medical appointments, to pick up and drop off his daughter Aria as needed, and such conditions. In asking for time served, he respectfully submits that the time he has already served before release on bail (***approximately 6 months***) is more than adequate punishment for his role in this scheme and it is balanced with the 3553(a) factors mitigating his punishment.

Dated: January 31, 2025.    /s/ *Ezekiel E. Cortez*
                            Ezekiel E. Cortez
                            *Attorney for Fabrisio Arias*

United States v. Fabrisio Arias, 22CR2745-JO
17